Nicasio RODRIGUEZ PAGAN,
Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.

No. 86–1464.

United States Court of Appeals,
First Circuit.

Submitted Oct. 10, 1986.

Decided March 24, 1987.

Rafael Carreras-Valle, Rio Piedras, P.R., on brief, for plaintiff, appellant.

Pamela Gerr, Atty., Office of the General Counsel, Social Security Div., Dept. of Health and Human Services, Washington, D.C., Daniel F. Lopez Romo, U.S. Atty., Wanda Rubianes Collazo, Asst. U.S. Atty., Hato Rey, P.R., Donald A. Gonya, Chief Counsel for Social Security, Randolph W. Gaines, Deputy Chief Counsel for Social Security Litigation, and A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., on brief, for defendant, appellee.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

PER CURIAM.

Claimant Nicasio Rodriguez Pagan filed an application for Social Security disability benefits on December 17, 1981 alleging left leg problems, high blood pressure, pain, and a nervous condition. The Secretary denied benefits on the ground that claimant had not demonstrated the existence of a severe impairment. After a district court affirmance, this court, on appeal, vacated the judgment of the district court and remanded the case for further consideration on the ground that the Secretary had failed to consider medical evidence supporting the claim of a severe impairment.

On remand, the ALJ (administrative law judge) reassessed the evidence without a further hearing and found claimant not disabled. The ALJ conceded that claimant had a severe impairment or impairments that precluded his return to his former work as a carpenter and construction laborer, but found that claimant retained the residual functional capacity to perform sedentary work. Accordingly, the ALJ applied Rule 201.25 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grid") to reach a finding of not disabled. The ALJ evaluated claimant's non-exertional impairments (high blood pressure, pain and a nervous condition) and found that they did not significantly affect his ability to perform the full range of jobs requiring sedentary work. After the Appeals Council denied claimant's request for review of the ALJ's decision, claimant appealed to the district court, which affirmed the Secretary. On appeal to this court, claimant contends that the Secretary misapplied the grid and that the Secretary's decision is not supported by substantial evidence. We affirm.

We find substantial evidence in the record to support the Secretary's finding that claimant's exertional impairments did not preclude him from performing the full range of jobs requiring sedentary work during the period from December 31, 1978 to June 30, 1979.[1] There is no question that claimant suffered a fracture of his left leg in 1969 that resulted in some functional limitations. Some medical evidence also suggests that claimant suffered from arthritis. However, the Secretary credited a residual functional capacity evaluation submitted by Dr. Medina, a consulting internist/cardiologist, which concluded that claimant could stand, walk, or sit eight hours, lift up to 50 pounds and lift or carry up to 25 pounds frequently, and bend, squat, crawl, climb, and reach above shoulder level occasionally. Dr. Medina found no functional limitations on claimant's use of his hands, but found that claimant could not use his left leg for repetitive movements such as operation of foot controls. Dr. Medina's findings established that claimant's exertional impairments did not preclude him from performing sedentary work, which is defined in the Social Security regulations as follows:

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of

---

1. Claimant claims disability since December 31, 1978, and there is no dispute that he was last insured under the Act on June 30, 1979. The issue in this case, consequently, is whether or not claimant was disabled under the Act during the period between those two dates.

walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

20 C.F.R. § 404.1567(a).

■ Although other medical evidence in the record conflicted with Dr. Medina's conclusions, the resolution of such conflicts in the evidence is for the Secretary. We must affirm the Secretary's resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence. *Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 128 (1st Cir.1981). We have no basis on which to question the Secretary's decision not to credit the medical findings of two treating physicians, Dr. Davila and Dr. Felix, that claimant's exertional impairments disabled him or substantially restricted his functional capacity. The Secretary assessed the reports of both physicians and reasonably concluded that they relied excessively on claimant's subjective complaints, rather than on objective medical findings. The opinions of Dr. Davila and Dr. Felix are not entitled to greater weight merely because they were treating physicians, whereas Dr. Medina was a consulting physician. *Sitar v. Schweiker*, 671 F.2d 19, 22 (1st Cir.1982); *Perez v. Secretary of Health, Education and Welfare*, 622 F.2d 1 (1st Cir.1980). Nor is the Secretary bound to accept Dr. Felix's evaluation of claimant's leg condition merely because Dr. Felix is an orthopedist, whereas Dr. Medina is an internist/cardiologist. Our layman's view is that assessing the functional impact of claimant's leg problems does not require a high degree of medical specialization. Claimant, while noting that Dr. Medina is not an orthopedist, does not argue to the contrary. Under the circumstances of this case we cannot say that the Secretary acted unreasonably in crediting Dr. Medina's report.

■ We next turn to claimant's contention that the Secretary erred in applying the grid to reach a finding of not disabled because claimant's non-exertional impairments precluded him from performing the full range of sedentary work. In *Gagnon v. Secretary of Health and Human Services*, 666 F.2d 662 (1st Cir.1981), and again in *Perez Lugo v. Secretary of Health and Human Services*, 794 F.2d 14 (1st Cir. 1986), this court approved the procedure set out by section 200.00(e)(2) of Appendix 2 to Subpart P, 20 C.F.R. Part 404, to be followed in applying the grid when both exertional and non-exertional impairments are alleged. The regulations state,

"However, where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations."

The Secretary properly followed this analysis in that he applied the grid only after determining that claimant's non-exertional impairments did not significantly affect claimant's ability to perform the full range of jobs requiring sedentary work. *See Perez Lugo, supra*, 794 F.2d at 17; *Borrero Lebron v. Secretary of Health and Human Services*, 747 F.2d 818 (1st Cir.1984).

■ We find, furthermore, that this determination was supported by substantial evidence of record. Claimant introduced no medical evidence to support his allegation of high blood pressure. While the record does suggest that claimant's leg problems and arthritis are a source of pain, for which claimant has taken medication, the above-cited medical findings of Dr. Medina, permissibly accepted by the Secretary, do not show the existence of a condition that would reasonably be expected to produce pain substantial enough to significantly compromise claimant's functional capacity to perform sedentary work. Moreover, the record also contains ample non-

medical evidence inconsistent with the degree of limitation of function associated with severe pain. Although claimant's leg fracture occurred in 1969, claimant continued to work off and on through 1978. He stated on a December 19, 1981 disability report that he could take care of his personal needs and could use public transportation alone. In view of this evidence we find no lack of support for the Secretary's findings discrediting claimant's allegations of severe pain.

Although the matter is considerably closer, we also find substantial record evidence to support the Secretary's finding that claimant's nervous condition did not significantly affect his ability to perform the full range of sedentary work. The record contains no psychiatric evaluation of claimant's emotional condition. Dr. Medina, a consulting internist/cardiologist, made no specific findings as to claimant's mental state, but noted that claimant was "in no distress." Since Dr. Medina submitted a comprehensive evaluation of complainant's health, the absence of any affirmative mention of a nervous condition, or even of subjective complaints of nervousness, is itself significant. Dr. Felix, claimant's treating orthopedist, found that claimant suffered from "severe nervousness." He noted that claimant had had this condition since childhood, but that it had worsened at some time after his 1969 leg fracture.

■ On this bare state of the medical evidence we conclude that the Secretary was justified in discounting claimant's allegations of a severe nervous condition. It is the Secretary's province to resolve conflicts in the medical evidence. *Lizotte, supra,* 654 F.2d at 128. Both medical reports provide vague and conclusory findings about claimant's mental condition, arrived at by non-psychiatrists and unsupported by any objective or clinical findings. Although it is true that Dr. Felix's report addresses itself more directly and specifically to the question of claimant's mental state, that report appears merely to restate claimant's subjective complaints. For example, Dr. Felix asserted that claimant had suffered severe nervousness since childhood which

had recently worsened, but Dr. Felix's first examination of claimant as treating physician did not occur until February 24, 1982. Moreover, having found Dr. Medina's findings, and not Dr. Felix's, worthy of credit as to claimant's leg problems, the Secretary reasonably could deem Dr. Medina's report more credible as to nervousness as well.

Also, the record is replete with non-medical evidence inconsistent with a severe nervous condition. Although claimant does take medication for his nerves, there is no evidence that he is under psychiatric treatment. A Social Security interviewer stated in a report of a December 17, 1981 interview with claimant, "No evidence of nervousness observed." Dr. Felix found a nervous condition since childhood, albeit a worsening one, but plaintiff worked off and on through 1978. Plaintiff either testified or stated in his December 19, 1981 disability report that he gets along well with his family, talks with and has had no problems with his neighbors, can take care of his personal needs, and uses public transportation alone. We conclude that Dr. Medina's admittedly sketchy report, when augmented by this considerable body of non-medical evidence, constitutes substantial evidence to support the Secretary's finding that claimant's nervous condition did not significantly restrict his ability to perform the full range of jobs requiring sedentary work.

■ There is no merit to claimant's contention that the Secretary violated 42 U.S.C. § 405(b)(1) by failing to hold another hearing after the case was remanded. Section 405(b)(1) states,

"Upon request by any such individual (applying for a payment) ... the Secretary ... shall give such applicant ... reasonable notice and opportunity for a hearing with respect to such decision...."

The required hearing was held on September 21, 1982 in the course of the Secretary's initial consideration of claimant's application. We think it clear that satisfied the Secretary's obligations under § 405(b)(1). Furthermore, we remanded

this case for consideration of the medical reports of Dr. Davila and Dr. Felix, to which the Secretary initially had given inadequate attention. We did not require that a second evidentiary hearing be conducted on remand.

Similarly, we reject claimant's assertion that the Secretary should have arranged for testimony by a medical advisor on remand. Use of a medical advisor in appropriate cases is a matter left to the Secretary's discretion; nothing in the Act or regulations requires it. *See Richardson v. Perales,* 402 U.S. 389, 408, 91 S.Ct. 1420, 1430, 28 L.Ed.2d 842 (1971).

We have considered claimant's remaining arguments and find them meritless.

The judgment of the district court is *affirmed.*